```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

SIDNEY CALHOUN,                       :

                    Plaintiff,        :    10 Civ. 182 (LAK)(HBP)

     -against-                        :    REPORT AND
                                           RECOMMENDATION
THE NEW YORK CITY DEPARTMENT,         :
OF CORRECTION, et al.,
                                      :

                    Defendants.       :
----------------------------------X
```

          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE LEWIS A. KAPLAN, United States Dis-

trict Judge,


I.   Introduction


          Plaintiff Sidney Calhoun, a former detainee at the

George R. Vierno Center ("GRVC") on Rikers Island, commenced this

action, pro se, against the New York City Department of Correc-

tion ("NYCDOC"), the Department of Mental Health and Hygiene and

twelve individual defendants pursuant to 42 U.S.C. § 1983.

Plaintiff claims that he was subjected dangerous conditions and

received inadequate medical care in violation of his Eighth

Amendment right against cruel and unusual punishment.  On con-

sent, the NYCDOC and the Department of Mental Health and Hygiene

were dismissed from this action and replaced by the City of New York (the "City") (Order of Service, dated Apr. 12, 2013, (Docket Item 36) at 3).

By notice of motion, dated July 15, 2013, the City moved to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On November 22, 2013, after nearly six months without response to the motion from plaintiff, I issued an Order to plaintiff, stating:

> By notice of motion dated July 15, 2013 (Docket Item 43), defendants have moved to dismiss the com-plaint.  To date, plaintiff has not served or filed any opposition to the motion, nor has he requested an extension of time within which to serve opposition papers.
>
> Although I shall consider the merits of the defendants' motion and shall not grant the motion on default, plaintiff's failure to submit any opposition to the motion to dismiss makes it substantially more likely that the motion will be granted.  Thus, plain-tiff's failure to oppose the motion increases the likelihood that his complaint will be dismissed.
>
> Accordingly, if plaintiff wishes to submit any opposition to the defendants' pending motion, he is directed to serve and file such papers no later than December 16, 2013.  In the absence of a request for an extension of time, I shall consider the motion fully submitted as of that date and ready for decision.

(Order, dated November 22, 2013, (Docket Item 48)).  A copy of this Order was mailed to plaintiff at Sing Sing Correctional Facility, 354 Hunter Street, Ossining New York 10562, and was

returned to my chambers as undeliverable.[1]  Plaintiff has not responded to defendant's motion or communicated with my chambers in any way since this motion was filed.  Accordingly, I consider the City's motion fully submitted and ripe for decision.

II.   Facts[2]

Plaintiff's claim arises from allegedly dangerous conditions to which he was subjected while in the custody of NYCDOC as a pre-trial detainee at GRVC on Rikers Island.

At or about midday on June 19, 2009, plaintiff was transported to GRVC's punitive segregation unit (Am. Compl. 15). He was placed in a cell that had previously undergone repairs, but was recently deemed habitable by prison officials (Am. Compl. 15).  However, the cell's windows were bolted shut and the cell's ventilation and sprinkler systems were inoperable (Am. Compl. 15).  Plaintiff also alleges that the cell did not contain a mattress or a towel, sheet, face cloth or cup ("Toiletries") (Am. Compl. 16).  Plaintiff claims that Corrections Officers Abrams

---

[1]As noted in my November 22, 2013 Order, plaintiff was apparently released from custody on June 5, 2013, but the address set forth in the text is the only address plaintiff has provided to the Court.

[2]The facts set forth herein are drawn from plaintiff's amended complaint (Amended Complaint, dated February 20, 2010, (Docket Item 4) ("Am. Compl.")) unless otherwise noted.

and Chuck,[3] the touring officers that afternoon, failed to alert the touring captain that his cell lacked a mattress or to obtain a mattress and Toiletries for him themselves (Am. Compl. 16).  At or around 4:15 p.m., plaintiff received a mattress but not the Toiletries (Am. Compl. 16).

At or around 8:15 p.m. that evening, plaintiff, while washing his face, flipped the light switch in his cell and received an electric shock (Am. Compl. 17).  The light switch allegedly sparked and "exploded," resulting in electrical power being cut off to the top and bottom tiers of plaintiff's cell block and black residue around the socket (Am. Compl. 17, 20).  Although plaintiff's accounts of his injuries are inconsistent, he asserts that he suffered severe pain from burns on the middle and ring fingers of his right hand, intense throbbing, and then numbness (Am. Compl. 17-18).  Officer Chuck responded at around 8:40 p.m. and arranged for plaintiff to be escorted to the GRVC's clinic (Am. Compl. 17).  Between 9:00 p.m. and 9:30 p.m., Corrections Officer Lumina brought plaintiff to GRVC's clinic for treatment (Am. Compl. 17).

------

[3]Plaintiff handwrote his amended complaint on a form complaint.  He spells the names of several officers inconsistently.

The clinic's physician that evening, Dr. Pravin Ranjan, diagnosed plaintiff with first degree burns to the middle and ring fingers of his right hand (Am. Compl. 25).  Dr. Ranjan dressed his hand and prescribed plaintiff Motrin and Silvadene cream (Am. Compl. 18, 25).

After leaving the clinic, plaintiff refused to return to his cell.  Captain Banks ultimately persuaded plaintiff to do so by offering to provide his missing Toiletries (Am. Compl. 18).  After plaintiff returned to his cell he learned that his telephone and shower privileges had been revoked.  He also did not receive the missing Toiletries (Am. Compl. 19).  On two subsequent occasions, plaintiff's also found his food "destroyed" (Am. Compl. 19).  Plaintiff concludes that Captain Querin, Captain Smith, Deputy Stutes, and Corrections Officers Abrams, Chuck, Lopez and Ruiz revoked these privileges at the order of Captain Banks because he refused to return to his cell (Am. Compl. 19).  He also asserts that Captain Banks delayed the investigation of the light switch for the same reason (Am. Compl. 20).

Plaintiff was given a follow-up appointment at GRVC's clinic three days later on June 22, 2009.  Plaintiff told the clinic staff that he needed new dressing and Silvadene, but the attending physician advised plaintiff that he had fully recovered from treatment (Am. Compl. 20).  The medical records attached to

the amended complaint indicate that GRVC's medical staff also saw plaintiff again on June 28, 2009 and July 2, 2009 (Am. Compl. 32, 34).

Three weeks after the incident with the light switch, plaintiff was transferred to another cell (Am. Compl. 5, 19). Some time after plaintiff's transfer, maintenance workers repaired the defective light switch (Am. Compl. 20).  Finally, plaintiff asserts that prison officials had been aware of the defective light switch before his accident because "countless" complaints had been filed with unidentified individuals regarding "an 'exploding light switch'" (Am. Compl. 19).  Plaintiff does not disclose how he knows this putative fact.

Plaintiff claims that he suffered a physical injury to his right hand and trauma from the three weeks he was forced to stay in the cell in question.  He seeks $5,000,000 in damages for pain and suffering and emotional stress.

III.  Analysis

   A.  Standards Applicable
       to a Motion to Dismiss

       The standards applicable to a motion to dismiss pursu-

ant to Rule 12(b)(6) are well-settled and require only brief

review.

           When deciding a motion to dismiss under Rule
           12(b)(6), [the court] must accept as true all
           well-pleaded factual allegations of the complaint and
           draw all inferences in favor of the pleader.  See City
           of Los Angeles v. Preferred Communications, Inc., 476
           U.S. 488, 493, 106 S. Ct. 2034, 90 L. Ed. 2d 480
           (1986); Miree v. DeKalb County, 433 U.S. 25, 27 n. 2,
           97 S. Ct. 2490, 53 L. Ed. 2d 557 (1977) (referring to
           "well-pleaded allegations"); Mills v. Polar Molecular
           Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  "'[T]he
           complaint is deemed to include any written instrument
           attached to it as an exhibit or any statements or
           documents incorporated in it by reference.'"  Int'l
           Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d
           69, 72 (2d Cir. 1995) (quoting Cortec Indus., Inc. v.
           Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)).  The
           Court also may consider "matters of which judicial
           notice may be taken."  Leonard T. v. Israel Discount
           Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999)
           (citing Allen v. WestPoint-Pepperill, Inc., 945 F.2d
           40, 44 (2d Cir. 1991)).  In order to avoid dismissal, a
           plaintiff must do more than plead mere "[c]onclusory
           allegations or legal conclusions masquerading as fac-
           tual conclusions."  Gebhardt v. Allspect, Inc., 96 F.
           Supp. 2d 331, 333 (S.D.N.Y. 2000) (quoting 2 James Wm.
           Moore, Moore's Federal Practice ¶ 12.34[a] [b] (3d ed.
           1997)).

Hoffenberg v. Bodell, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3

(S.D.N.Y. Sept. 30, 2002) (Preska, D.J.); see also In re Elevator

Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007); Johnson & Johnson v. Guidant Corp., 525 F. Supp. 2d 336, 345-46 (S.D.N.Y. 2007) (Lynch, D.J.).

The Supreme Court has clarified the proper mode of inquiry to evaluate a motion to dismiss pursuant to Rule 12(b)(6), which uses as a starting point the principle that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a).

> [I]n Bell Atl[antic] Corp. v. Twombly, 550 U.S. 544 (2007), the Court disavowed the well-known statement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)[,] that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plain-tiff can prove no set of facts in support of his claim which would entitle him to relief."  550 U.S. at 562. Instead, to survive a motion to dismiss under Twombly, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

Talley v. Brentwood Union Free Sch. Dist., 08 Civ. 790, 2009 WL 1797627 at *4 (E.D.N.Y. June 24, 2009).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assump-tion that all the allegations in the complaint are true (even if doubtful in fact) . . . .

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (cita-
tions, internal quotations and alterations omitted).

       In evaluating a motion under Rule (12)(b)(6), the court
must determine whether the plaintiff has alleged any facially
plausible claims.  Fahs Constr. Grp., Inc. v. Gray, 725 F.3d 289,
290 (2d Cir. 2013) (per curiam).  A claim is plausible when its
factual content "allows the court to draw the reasonable infer-
ence that the defendant is liable for the misconduct alleged.
The plausibility standard is not akin to a 'probability require-
ment,' but it asks for more than a sheer possibility that a
defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009) (citations omitted).  "Where a complaint pleads
facts that are merely consistent with a defendant's liability, it
stops short of the line between possibility and plausibility of
entitlement to relief."  Ashcroft v. Iqbal, supra, 556 U.S. at
678 (internal quotations omitted).  Accordingly, "where the
well-pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged -- but
it has not 'show[n]' -- 'that the pleader is entitled to re-
lief.'"  Ashcroft v. Iqbal, supra, 556 U.S. at 679, quoting
Fed.R.Civ.P. 8(a)(2).

       "[T]he tenet that a court must accept as true all of
the allegations contained in a complaint is inapplicable to legal

conclusions," however.  Ashcroft v. Iqbal, supra, 556 U.S. at 663; Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013).  As a result, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, supra, 556 U.S. at 664.

Nevertheless, where, as here, a plaintiff proceeds pro se, the complaint must be liberally construed to raise the strongest claims the allegations suggest.  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013); Sims v. Blot, 534 F.3d 117, 133 (2d Cir. 2008); Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); see also Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Tracy v. Freshwater, 623 F.3d 90, 100-04 (2d Cir. 2010) (observing that the requirement of "special solicitude" includes liberal construction of papers, "relaxation of the limitations on the amendment of pleadings," leniency in enforcing procedural rules, and "deliberate, continuing efforts to ensure that a pro se litigant understands what is required of him.") (citations omitted).

B.   Section 1983 Claims

Section 1983 imposes liability on individuals who, while acting under the color of state law, violate an individual's federally-protected rights.  Perkins v. Brown, 285 F. Supp. 2d 279, 283 (E.D.N.Y. 2003); Johnson v. Bendheim, 00 Civ. 720 (JSR), 2001 WL 799569 at *5 (S.D.N.Y. July 13, 2001) (Rakoff, D.J.).  Plaintiff claims that defendants violated his constitutional rights by subjecting him to unreasonable health and safety risks and providing inadequate medical treatment for injuries he sustained during his incarceration.

The United States Constitution protects incarcerated individuals against deliberate indifference to conditions that pose a substantial risk of serious harm to his physical well-being.  If the individual is a sentenced prisoner, the source of protection is the Eighth Amendment.  Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted).  If the individual is a pretrial detainee, the source of protection is the Due Process Clause of the Fourteenth Amendment.  Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).  The source of the protection is of no practical importance because the Fourteenth Amendment provides substantially the same protection to pretrial detainees that the Eighth Amendment provides to sentenced prisoners.  See Bell v.

11

Wolfish, 441 U.S. 520, 535 n.16 (1979); Weyant v. Okst, supra,
101 F.3d at 856; Bryant v. Maffucci, 923 F.2d 979, 983 (1991);
see also Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000)("We
have often applied the Eighth Amendment deliberate indifference
test to pre-trial detainees bringing actions under the Due
Process Clause of the Fourteenth Amendment."). Moreover,
"[b]ecause the due process rights of pretrial detainees are 'at
least as great as the Eighth Amendment protections available to a
convicted prisoner,' and the same standard applies, cases cited
that refer to the Eighth Amendment are thus applicable to the
conditions of confinement claims alleged [by a pretrial de-
tainee]." Pine v. Seally, No. 9:09-CV-1198 (DNH/ATB), 2011 WL
856426 at *3 n.12 (N.D.N.Y. Feb. 4, 2011), quoting City of Revere
v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).

     1.   Deliberate Indifference
        to Plaintiff's Conditions
        of Confinement

The Eighth Amendment prohibits "cruel and unusual
punishments." In Wilson v. Seiter, 501 U.S. 294, 296-302 (1991),
the United States Supreme Court addressed an inmate's claim that
prison conditions violated the Eighth Amendment's prohibition
against cruel and unusual punishment and noted that "[t]he
Constitution . . . 'does not mandate comfortable prisons,' . . .

and only those deprivations denying 'the minimal civilized measure of life's necessities,' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Wilson v. Seiter</u>, <u>supra</u>, 501 U.S. at 298, <u>quoting</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 349 (1981); <u>Salahuddin v. Goord</u>, 467 F.3d 263, 267 (2d Cir. 2006).

In <u>Farmer v. Brennan</u>, <u>supra</u>, 511 U.S. at 834, the Supreme Court articulated a two-part test for determining whether prison conditions violated the Eighth Amendment with both objective and subjective components.  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" <u>Farmer v. Brennan</u>, <u>supra</u>, 511 U.S. at 834, <u>quoting</u> <u>Wilson v. Seiter</u>, <u>supra</u>, 501 U.S. at 298; <u>see</u> <u>also</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992).  For claims premised on "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer v. Brennan</u>, <u>supra</u>, 511 U.S. at 834, <u>citing</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993).

Second, the Supreme Court required that "a prison official must have a 'sufficiently culpable state of mind.'" <u>Farmer v. Brennan</u>, <u>supra</u>, 511 U.S. at 834, <u>quoting</u> <u>Wilson v. Seiter</u>, <u>supra</u>, 501 U.S. at 297; <u>see</u> <u>also</u> <u>Wilson v. Seiter</u>, <u>supra</u>, 501 U.S. at 302-303; <u>Hudson v. McMillian</u>, <u>supra</u>, 503 U.S. at 8; <u>Trammell v. Keane</u>, <u>supra</u>, 338 F.3d 155, 161 (2d Cir. 2003).  In

cases involving prison conditions, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Farmer v. Brennan, supra, 511 U.S. at 834, quoting Wilson v. Seiter, supra, 501 U.S. at 302-03; see also Helling v. McKinney, supra, 509 U.S. at 34-35; Hudson v. McMillian, supra, 503 U.S. at 5; Estelle v. Gamble, 429 U.S. 97, 106 (1976); Hines v. Lacy, 189 F.3d 460, 1999 WL 642915 at *3 (2d Cir. 1999) (unpublished) (internal citations omitted); Lyncee v. Jenks, 98 Civ. 3638 (RCC), 2000 WL 343893 at *2-*3 (S.D.N.Y. Mar. 31, 2000) (Casey, D.J.).  An official acts with deliberate indifference when she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, supra, 511 U.S. at 837; see also Wilson v. Seiter, supra, 501 U.S. at 298-302; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). "The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . ." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny . . . . To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for

14

the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986); accord County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998), citing Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); Kruzel v. County of Suffolk, 23 F. App'x 95, 96 (2d Cir. 2002); John E. Andrus Mem'l, Inc. v. Daines, 600 F. Supp. 2d 563, 585 (S.D.N.Y. 2009) (Seibel, D.J.); Miner v. N.Y. State Dep't of Health, 02 Civ. 3180 (MBM), 2004 WL 1152491 at *5 (S.D.N.Y. May 24, 2004) (Mukasey, D.J.).

A Section 1983 claim will not lie for merely unpleasant prison conditions. Courts outside of this Circuit, however, have concluded that an inmate's forced exposure to the risk of electric shock can, in some circumstances, be objectively serious. For example, forcing an inmate to work with faulty electrical equipment or near exposed electrical wiring without appropriate protection can pose a substantial risk of serious harm. See, e.g., Ambrose v. Young, 474 F.3d 1070, 1078 (8th Cir. 2007) (finding an Eight Amendment violation where supervising officer ordered inmates to stomp out a fire near a downed power line); Hall v. Bennett, 379 F.3d 462, 464 (7th Cir. 2004) ("[W]orking on a live electrical wire without adequate protective equipment presents an objectively serious risk to inmate safety . . . .");

15

McKinney v. Archey, 1:08 CV 112 (JM), 2008 WL 3914978 at *3 (N.D.
Ind. Aug. 19, 2008) (noting that working with a defective elec-
trical breaker "presents an objectively serious risk").  Simi-
larly, ungrounded, frayed or exposed wiring in an inmate's cell
or shower room, especially near water, can create an objectively
serious danger to an inmate's safety.  See, e.g., Cotton v.
Taylor, No. 97-60610, 1999 WL 155652 at *4 (5th Cir. 1999) (per
curiam) (holding that pooling water and sparking electrical
outlets in an inmate's cell pose a substantial risk of serious
harm); Huff v. Pundt, No. 2:11-cv-148, 2012 WL 2994839 at *8
(S.D. Tex. June 29, 2012) (concluding that a shower adjacent to
exposed wires and rusted light fixtures poses a substantial risk
of electrocution); Patterson v. Kistousky, No. 07C 5731, 2010 WL
5490653 at *3 (N.D. Ill. Dec. 30, 2010)(finding that multiple
shocks caused by faulty wiring in shower over a two month period
where the frequency and extent of those shocks were in dispute
potentially raised a colorable Eighth Amendment claim).  On the
other hand, absent any physical harm, potential electrical
hazards do not necessarily rise to the level of a constitutional
violation.  Van Nort v. Dickinson, No. CIV. S-09-1566 (KJM), 2010
WL 308715 at *2 (E.D. Cal. Jan. 12, 2010), citing Morissette v.
Peters, 45 F.3d 1119, 1123 (7th Cir. 1995) (dismissing plain-
tiff's allegations that wires and electrical outlets abutting the

16

steel frame of his bed posed a substantial risk of serious harm absent allegations that the outlets were overloaded or that the wiring was frayed or in poor condition); Robinson v. Detella, No. 95 C 4067, 1996 WL 422154 at *3-*4 (N.D. Ill. July 24, 1996) (holding that plaintiff failed to state an Eighth Amendment claim because he was not required to spend any time in basement where the alleged electrical system had exposed wires and dripping water).

Under the subjective component of the two-prong test, a Section 1983 claim for exposure to electrical hazards will not lie for conduct that is merely negligent. Austin v. Craighead Cnty. Jail, 189 F. App'x 583, 584 (8th Cir. 2006) (per curiam) (no liability where defendant "believed the power to the wires had been cut off, and Austin did not show that defendants actually knew of and disregarded, or were deliberately indifferent to, a risk to his safety."); Turner v. Burnside, No. 5:06-CV-293 (CAR), 2011 WL 1230821 at *2-*3 (M.D. Ga. Feb. 22, 2011) (Report & Recommendation), adopted at, 2011 WL 1193211 (M.D. Ga. Mar. 30, 2011), aff'd, 444 F. A'ppx 394, 396-97 (11th Cir. 2011) (recommending summary judgment be granted for defendant where plaintiff presented no evidence that the supervising officer of his work detail knew a defective oven posed a substantial risk of electrocution); McKinney v. Archey, supra, 2008 WL 3914978 at *4 (dis-

17

missing complaint where plaintiff failed to show (1) complaints
regarding defective electric breaker, (2) allegations that
defendants knew of the condition or (3) that the defect was
readily apparent); Littlejohn v. Moody, 381 F. Supp. 2d 507, 511-
12 (E.D. Va. 2005) (dismissing complaint notwithstanding defen-
dant's knowledge that buffering unit had history of shocking
people; unit had recently been repaired and defendant was justi-
fied in assuming that equipment was no longer dangerous).

        Finally, courts have dismissed plaintiffs' claims where
there is no genuine issue of fact that defendants were not
deliberately indifferent to defective electrical wiring in a
cell.  Compare Cotton v. Taylor, supra, 1999 WL 155652 at *4
(prison official made repairs after learning of the risk of
electric shock from pooling water in plaintiff's cell), and
Morissette v. Peters, supra, 45 F.3d at 1123, with Cody v.
Newborn, No. 6:09-cv-06026, 2011 WL 4368549 at *5 (W.D. Ark. Aug.
25, 2011) (Report & Recommendation), adopted at, 2011 WL 4368389
(W.D. Ark. Sept. 19, 2011) (failure to remedy hanging wires above
shower head after plaintiff's complaints of electric shock
demonstrated deliberate indifference).

        Judged by the foregoing standards, I conclude that
plaintiff's claim should be dismissed to the extent it is based
on the allegedly unsafe conditions in his cell.  Assuming,

without deciding, that the circumstances were sufficiently serious under the objective prong, plaintiff's amended complaint does not allege facts sufficient to meet the subjective prong.

The amended complaint alleges that a defective light switch in plaintiff's cell "exploded" when plaintiff used it (Am. Compl. 17).  According to plaintiff, the switch sparked, steamed, burned and cut off the power to the top and bottom tiers of the cellblock (Am. Compl. 17, 20).  The electrical shock also caused plaintiff to suffer burns, severe pain, throbbing and subsequent numbness in his hand (Am. Compl. 17).  If true, these allegations demonstrate that the defective light switch in plaintiff's cell may have created an objectively serious danger to plaintiff's health and safety.  As the cases above demonstrate, allegations that (1) a cell contained faulty wiring, (2) the defect had the potential to cause electric shock, and (3) the wiring defect shocked plaintiff and caused non-trivial injuries can satisfy the objective prong of a deliberate indifference claim.  Cotton v. Taylor, supra, 1999 WL 155652 at *4; Huff v. Pundt, supra, 2012 WL 2994839 at *8; Patterson v. Kistousky, supra, 2010 WL 5490653 at *3.

Although plaintiff appears to have alleged facts that satisfy the objective prong of a Section 1983 claim, his claim, nevertheless, fails because he does not sufficiently allege any

facts that could sustain a finding of deliberate indifference. Plaintiff does not sufficiently allege that defendants knew of and disregarded a substantial risk to plaintiff's health or safety, or that defendants were aware of facts from which they could have inferred that there was a substantial risk of serious harm, that they drew such an inference and that they disregarded it.

Plaintiff does not allege that any of the defendants knew that the light switch in his cell was defective.  The closest plaintiff comes to alleging that the defendants knew of an unreasonably dangerous condition in plaintiff's cell is to allege that unidentified prison officials "knew [plaintiff's] complaint was real [be]cause they had countless grievance[s] for similar complaint[s] about an 'exploding light switch' to my event [sic]" (Am. Compl. 19).  Assuming that this allegation relates to the switch that allegedly injured plaintiff, I con-clude that this allegation does not meet the plausibility stan-dard set forth in  Ashcroft v. Iqbal, supra, 556 U.S. at 680-83. Although I appreciate that no heightened pleading standard is applicable in Section 1983 cases, Matos v. City of New York, 10 Civ. 4558, 2012 WL 7160430 at *6 n.6 (E.D.N.Y. Dec. 3, 2012), plaintiff here is alleging facts that a pretrial detainee would not know, i.e., the history of grievances regarding the condi-

20

tions of his cell.  In the absence of some explanation of the
basis for this allegation, I conclude that this aspect of the
complaint fails to allege "enough fact[s] to raise a reasonable
expectation that discovery will reveal evidence" sufficient to
sustain a finding of deliberate indifference.  Twombly v. Bell
Atlantic Corp., supra, 550 U.S. at 556.

        Moreover, even if this allegation were plausible, it
fails to provide a basis on which to attribute knowledge of the
allegedly dangerous conditions to any of the named defendants.
See Brantley v. Fischer, 9:12-CV-1051 (NAM/RFT), 2013 WL 5466790
at *6 (N.D.N.Y. Sept. 30, 2013).  If the complaint fails to state
a claim against the individual defendants, it necessarily fails
to state a Section 1983 claim against the City.  City of Los
Angeles v. Heller, 475 U.S. 796, 799 (1986); Curley v. Village of
Suffern, 268 F.3d 65, 71 (2d Cir. 2001).[4]

        Moreover, the response by prison officials to the
conditions in plaintiff's cell belies his claim of deliberate
indifference.  Plaintiff was moved to a new cell three weeks
after the incident and alleges no injury during those three weeks

---

        [4]The exception to Heller recognized in Barrett v. Orange
Cnty. Human Rights Comm'n, 194 F.3d 341, 347 (2d Cir. 1999) has
no application here because plaintiff does not allege that the
City authorized a policy that led to plaintiff's alleged injury.
See Sforza v. City of New York, 07 Civ. 6122 (DLC), 2009 WL
857496 at *9 (S.D.N.Y. Mar. 31, 2009) (Cote, D.J.).

(Am. Compl. 20).  The amended complaint also alleges that a maintenance crew fixed the switch in his cell soon after plaintiff was transferred (Am. Compl. 20).  The cases are clear that where, as here, prison officials resolve the electrical problem rather than ignore it, they do not act with deliberate indifference.  Cotton v. Taylor, supra, 1999 WL 155652 at *4.

I also note that plaintiff claims other deficiencies in his confinement.  Specifically, he alleges that he was deprived of a mattress from midday to 4:15 p.m. on June 19, 2009 and was denied Toiletries, phone and shower access, and, on two occasions, meals (Am. Compl. 15-16).  These deprivations are not sufficiently serious to sustain a due process claim.  See, e.g., Trammell v. Keane, supra, 338 F.3d at 165 ("Deprivation of . . . toiletries [other than toilet paper] for approximately two weeks -- while perhaps uncomfortable -- does not pose such an obvious risk to an inmate's health or safety . . . ."); Cunningham v. Jones, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (concluding that the Eighth Amendment was not violated where the meals provided were sufficient nutrition to sustain normal health); Wiley v. Kilpatrick, No. 07-CV-6485 (MAT), 2013 WL 434188 at *10 (W.D.N.Y. Feb. 4, 2013) (same); Davis v. Chapple, No. 07-cv-321 (GTS/DRH), 2009 WL 6312502 at *13 (N.D.N.Y. Nov. 4, 2009) (Report & Recommendation), adopted at, 2010 WL 985763 (N.D.N.Y. Mar. 16,

2010) (deprivation of a mattress for three days did not consti-

tute an objectively serious harm); Tapp v. Taylor, No. 05-CV-1442

(LEK/DRH), 2009 WL 2473499 at *4-*5 (N.D.N.Y. July 16, 2009)

(inmate housed naked and without a mattress for five hours did

not constitute an Eighth Amendment violation).  These temporary

and minor deprivations, judged independently or in the aggregate,

did not subject plaintiff to unreasonable health and safety

risks.

> 2.  Deliberate Indifference
>     to Plaintiff's Serious
>     Medical Needs

Plaintiff also claims that he was given inadequate

medical care resulting from his injuries (Am. Compl. 3).

Under the Eighth, and in this case, the Fourteenth,

Amendments, the government is obligated to provide medical care

to inmates and "'deliberate indifference to serious medical needs

of prisoners constitutes the "unnecessary and wanton infliction

of pain" proscribed by the Eighth Amendment.'"  Washington v. The

City of New York, 10 Civ. 389 (LTS)(JLC), 2011 WL 566801 at *2

(S.D.N.Y. Feb. 15, 2011) (Swain, D.J.), quoting Estelle v.

Gamble, supra, 429 U.S. at 104.

However, not every claim of inadequate medical treat-

ment by an inmate establishes a Constitutional violation.

Estelle v. Gamble, supra, 429 U.S. at 105.  A plaintiff must satisfy both the objective and subjective prongs of the deliberate indifference standard to state such a claim.  See Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).  A plaintiff must show that (1) "the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'" and (2) "the charged official acted with a 'sufficiently culpable state of mind.'" Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotations omitted).

A medical condition is sufficiently serious if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Johnson v. Wright, supra, 412 F.3d at 403 (internal quotation omitted).  "Factors to consider in determining the existence of a serious medical condition include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; the existence of chronic and substantial pain,' or 'the absence of adverse medical effects or demonstrable physical injury.'"  Edmonds v. Cent. N.Y. Psychiatric Ctr., 10 Civ. 5810 (DAB)(KNF), 2011 WL 3809913 at *4 (S.D.N.Y. Aug. 25, 2011) (Batts, D.J.) (internal footnote and alterations omitted),

quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) and
Smith v. Carpenter, 316 F.3d 178, 187 (2d Cir. 2003).

"Furthermore, 'the particular risk of harm faced by a
prisoner due to the challenged deprivation of care, rather than
the severity of the prisoner's underlying medical condition,
considered in the abstract' is the relevant inquiry in deciding a
. . . claim based on temporary delay or interruption of medical
treatment." Atkins v. Cnty. of Orange, 372 F. Supp. 2d 377, 413
(S.D.N.Y. 2005) (Conner, D.J.), quoting Smith v. Carpenter,
supra, 316 F.3d at 186. "Indeed, in most cases, the actual
medical consequences that flow from the alleged denial of care
will be highly relevant to the question of whether the denial of
treatment subjected the prisoner to a significant risk of harm."
Smith v. Carpenter, supra, 316 F.3d at 187.

To satisfy the subjective prong, a plaintiff must show
that "the prison official was aware of, and consciously disre-
garded, the prisoner's medical condition." Hernandez v. Goord,
02 Civ. 1704 (DAB), 2006 WL 2109432 at *6 (S.D.N.Y. July 28,
2006) (Batts, D.J.), citing Chance v. Armstrong, supra, 143 F.3d
at 703. "[I]n certain instances, a physician may be deliberately
indifferent if he or she consciously chooses 'an easier and less
efficacious' treatment plan." Chance v. Armstrong, supra, 143
F.3d at 703. "[M]ere medical malpractice is not tantamount to

25

deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." Cuoco v. Moritsugu, supra, 222 F.3d at 107 (internal quotation marks omitted).

Plaintiff alleges that he suffered numbness, throbbing, and "tremendous pain" in his hand from the electric shock (Am. Compl. 17-18).  The physician who saw plaintiff that evening, Dr. Pravin Ranjan, described the injury as first degree burns on the ring and middle fingers of his right hand (Am. Compl. 25). Plaintiff alleges that his wounds were dressed, and that he was prescribed Motrin for his pain and Silvadene to treat his burns (Am. Compl. 18).

A first degree burn does not ordinarily constitute an urgent medical condition or one likely to produce death, degeneration, or extreme pain.  Rather, first degree burn, unlike more serious second or third degree burns, is one that creates a mild redness in the skin but without blistering or any necrosis of the skin or surrounding tissue.  The Sloane-Doreland Annotated Medical-Legal Dictionary, 102 (1987); see also Johnson v. Havener, 534 F.2d 1232, 1233 (6th Cir. 1976) (quoting a physician's description of a first degree burn as "one which merely produces a redness of the skin, similar to sunburn").  Plain-

tiff's description of the burn he suffered is consistent with the symptoms of a burn in the first degree:  pain and discomfort on a small area of his body, but no blistering or long term scarring. Courts have often rejected burns of the magnitude suffered by plaintiff as insufficiently serious to satisfy the objective prong of the deliberate indifference standard where, as here, they are treated within hours of the injury.  See, e.g., Cole v. Fischer, No. 08 CV 512, 2009 WL 3734343 at *4 (W.D.N.Y. Nov. 4, 2009), aff'd, 416 F. App'x 111 (2d Cir. 2011) (finding that resulting back pain from second decree burns did not constitute a sufficiently serious injury); Pressley v. Green, 02 Civ. 5261 (NRB), 2004 WL 2978279 at *4 (S.D.N.Y. Dec. 21, 2004) (Buchwald, D.J.)(granting summary judgment upon finding that plaintiff's second degree burns to the chest and associated blistering did not constitute a sufficiently serious injury).  But cf. Walker v. Vargas, 11 Civ. 9034 (ER), 2013 WL 4792765 at *8 (S.D.N.Y. Aug. 26, 2013) (Ramos, D.J.), citing Paradis v. Blair, 1:07-CV-94, 2007 WL 3223222 at *2 (D. Vt. Oct. 29, 2007).  Moreover, plaintiff does not allege that his burns developed signs of infection or other complications, requiring more extensive medical treatment.  Smith v. Carpenter, supra, 316 F.3d at 186.  Plaintiff has not alleged any facts that suggest that his burns are so debilitating that the failure to treat them subjected him to a signifi-

cant risk of harm.  Thus, the amended complaint fails to allege a sufficiently serious medical condition.

Even if I assume that the allegations in the amended complaint satisfy the objective prong, they do not provide a factual basis to conclude that defendants were aware of, and consciously disregarded plaintiff's condition.  Plaintiff states that there were delays in his initial treatment and follow-up appointments and that the doctor who initially treated him was hostile (Am. Compl. 17-18, 20).  He also complains that he was denied bandages and Silvadene at his follow-up appointment (Am. Compl. 20).

Plaintiff's own allegations show that any delay was minor; the amended complaint alleges, at best, a delay of 90 minutes before the initial treatment (Am. Compl. 17).  Even if this delay was medically significant, allegations of delay alone do not rise to the level of recklessness.  James v. Correct Care Solutions, 13 Civ. 0019 (NSR), 2013 WL 5730176 at *6 (S.D.N.Y. Oct. 21, 2013) (Roman, D.J.).

Second, plaintiff's allegation that he did not receive the follow-up treatment that he wanted shows, at best, non-cognizable malpractice.  Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986); Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (McMahon, D.J.)

("[D]isagreements over medications, diagnostic techniques (e.g.,
the need for X-rays), forms of treatment, or the need for spe-
cialists or the timing of their intervention, are not adequate
grounds for a Section 1983 claim.").  The allegations here do not
demonstrate that defendants acted with deliberate indifference.

        Because plaintiff's claims do not "raise a right to
relief above a speculative level," he has failed to state a
claim.  Bell Atl. Corp. v. Twombly, supra, 550 U.S. 555 (citation
omitted).  Therefore, I respectfully recommend that the City's
motion to dismiss be granted.

        C.  Plaintiff's Claims Against
            the Individual Defendants

        Finally, I note that the individual defendants identi-
fied by plaintiff's amended complaint -- Captains Banks, Presley,
Querin and Smith, Deputy (Warden) Stutes, Corrections Officers
Abrams, Chuck, Durrant, Ruiz, Lumina and Lopez and a Dr.
Rosenthal -- were never served.[5]  If this report and recommenda-
tion is adopted, the individual defendants would be the only
defendants left in the case.

---

        [5]Docket Item 29 docket incorrectly states that plaintiff
returned executed summons' as to Banks, Presley and Durrant.  The
returned summons' in the case file, however, show that they were
unexecuted (See Docket Item 29).

The deficiencies in the amended complaint discussed above apply with equal for to all defendants.  Plaintiff's amended complaint does not sufficiently set forth facts from which a court can reasonably infer that <u>any</u> defendant was deliberately indifferent.  Where, as here, the substantive flaws in plaintiff's complaint warrant dismissal as to the unserved defendants and moving defendants alike, dismissal with prejudice for the reasons raised by a moving defendant, rather than a dismissal pursuant to Fed.R.Civ.P. 4(m), is the more prudent course of action.  <u>See</u> <u>McCoy v. Goord</u>, 255 F. Supp. 2d 233, 263 (S.D.N.Y. 2003) (Chin, D.J.) (declining to address whether claims against unserved defendants should be dismissed pursuant to Rule 4(m) where plaintiff failed to exhaust his administrative remedies under the PLRA); <u>see</u> <u>also</u> <u>Cuello v. Lindsay</u>, 09 Civ. 4525 (KAM)(MDG), 2011 WL 1134711 at *1 n.2 (E.D.N.Y. Mar. 25, 2011).

Accordingly, and for the reasons set forth in section III.B above, I respectfully recommend that plaintiff's claims against the individual defendants also be dismissed with prejudice.

IV.  <u>Conclusion</u>

For all the foregoing reasons, I respectfully recommend that the City's motion to dismiss (Docket Item 43) be granted and

that plaintiff's complaint be dismissed with prejudice as to all defendants.

V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C)) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Lewis A. Kaplan, United States District Judge, 500 Pearl Street, Room 2240, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Kaplan.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:   New York, New York
         January 14, 2014

                                    Respectfully submitted,


                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies mailed to:

Sidney Calhoun[6]
DIN 10-A-1812
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York   10562

Carolyn E. Kruk
Gloria M. Yi
New York City Law Department
100 Church Street
New York, New York   10007

---

[6]As noted above, plaintiff was released from custody on June
5, 2013 and the address set forth above is the only address
plaintiff has provided to the Court.